**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Cindy M. Pentland, Individually and
as Personal Representative of the
Estate of Kevin T. Pentland, Deceased,    Case No. 3:08CV2018
and Cindy M. Pentland as Next
Friend of Corbin Pentland, a Minor.

      Plaintiff,

  v.    ORDER

Erin Truckways, Ltd., et al.

      Defendants.

This is a wrongful death case arising from an accident between the defendants' semi-truck and a sport utility vehicle driven by Kevin T. Pentland, who was killed in the accident. Plaintiff Cindy M. Pentland alleges that defendant Billy D. Lynn, operating the semi-truck on behalf of defendant Erin Truckways, Ltd., negligently caused the accident. Defendants argue that Lynn was not negligent, and that the accident was due solely to Pentland's abrupt and unexpected turn across Lynn's path.

Pending is defendants' motion for summary judgment. [Doc. 39].[1] Jurisdiction is proper under 28 U.S.C. § 1332.

For the reasons discussed below, defendants' motion shall be denied in part and granted in part.

---

[1] Plaintiff does not contest the motion with regard to co-defendant Celadon Trucking, Inc. and Celadon Group, Inc..

**Background**

On August 28, 2006, defendant Lynn was driving in the westbound lane of U.S. Route 30, a two-line highway in Wyandot County, Ohio. Pentland's vehicle, a 1996 GMC Suburban towing a twenty-eight foot camper, was traveling within the speed limit and at roughly the same speed as Lynn.

Lynn had been following Pentland for two or three miles when, according to Lynn, Pentland activated his right turn signal as he approached the intersection of U.S. 30 and County Road 96, then moved to the right side of the roadway and either stopped or almost stopped. Lynn testified that he did not slow down his semi-truck as he saw Pentland's vehicle move to the right. Lynn instead moved left of center to avoid Pentland's vehicle, which remained partially in the westbound lane. As Lynn moved left to pass, Pentland, apparently attempting to make a U-turn, turned left in front of Lynn. Lynn's semi-truck collided with the driver's side of Pentland's Suburban, killing Pentland and injuring his five year old son. According to plaintiff's expert, the vehicles collided in the eastbound lane of U.S. 30.

**Standard of Review**

A party is entitled to summary judgment on motion under Federal Rule of Civil Procedure 56 if the nonmoving party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The movant initially must show the absence of a genuine issue of material fact. *Id.* at 323.

Once the movant meets the initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "requires the nonmoving party to

go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, the court must accept the nonmoving party's evidence as true and construe all evidence in the nonmoving party's favor. *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 456 (1992). The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of material fact. *Celotex*, *supra*, 477 U.S. at 323.

## Discussion

Plaintiff argues that summary judgment is inappropriate because there are genuine issues of material fact concerning Lynn's negligence. First, plaintiff contends that there are genuine issues of material fact regarding whether Lynn violated: 1) the Ohio assured safe distance statute; and 2) the Ohio statute prohibiting crossing the center line within one hundred yards of an intersection. Plaintiff also argues that the defendants have not met their initial burden of proving the absence of a genuine issue of material fact concerning plaintiff's general negligence claims. Finally, plaintiff contends that there remain genuine issues of material fact with respect to defendant's comparative negligence argument.

Under Ohio law, a plaintiff suing for negligence must show: 1) existence of a duty; 2) breach of that duty; 3) proximate cause between the breach and damage to the plaintiff; and 4) damage to the plaintiff. *See, e.g., CSX Transportation, Inc. v. Exxon/Mobil Oil Corporation*, 401 F.Supp.2d 813, 818 (N.D. Ohio 2005) (citing *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989)). The plaintiff has the burden of proving all of the elements. *Id*. Summary judgment is appropriate when the non-moving party has not established the elements necessary to maintain his negligence

action. *See, e.g., Keister v. Park Centre Lanes*, 3 Ohio App.3d 19 (1981).

## I. Negligence *Per Se*

Plaintiff attempts to defeat summary judgment by asserting that she has come forward with ample evidence to create genuine issues of material fact concerning whether Lynn violated O.R.C. § 4511.21(A) and § 4511.30 and was therefore negligent *per se*. Defendants contend that the plaintiff has not alleged any dispute regarding material facts, and has failed to establish elements essential to her claims.

Where a statute imposes a specific duty for the safety of others, failure to perform that duty is negligence *per se*. *Chambers v. St. Mary's Sch.*, 82 Ohio St. 3d 563, 565 (1998). "Application of negligence per se means that the plaintiff has conclusively established that the defendant breached the duty that he or she owed to the plaintiff, it is not a finding of liability per se because the plaintiff will also have to prove proximate cause and damages." *Leizerman v. Kanous*, 181 Ohio App. 3d 579, 583 (2009) (citing *Pond v. Leslein*, 72 Ohio St.3d 50, 53 (1995), and *Chambers*, *supra*, 82 Ohio St.3d at 565 (1998)).

Plaintiff alleges that Pentland was negligent *per se* because he violated O.R.C. § 4511.30 and § 4511.21.

### A. § 4511.30

Section 4511.30, provides, in part, that

> [n]o vehicle . . . shall be driven upon the left side of the roadway . . . [w]hen approaching within one hundred feet of or traversing any intersection.
> . . .
> This section does not apply . . . under the conditions described in division (A)(2) of section 4511.25.

Section 4511.25(A)(2) provides, in part, that

> Upon all roadways of sufficient width, a vehicle or trackless trolley shall be driven upon the right half of the roadway, except . . . [w]hen an obstruction exists making it necessary to drive to the left of the center of the highway; provided, any person so doing shall yield the right of way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard[.]

Plaintiff has not alleged any material facts in dispute under § 4511.30. The undisputed facts are that: 1) Pentland's vehicle moved towards the right side of the road with his right signal on while remaining partially on the roadway;[2] 2) Lynn moved left of center to avoid and pass Pentland's vehicle; and 4) Lynn moved left of center within 100 feet of an intersection.

Defendants argue that, though Lynn went left of center within 100 feet of the intersection, he did not violate § 4511.30 because Pentland's protruding vehicle obstructed his path of travel. Under § 4511.25(A)(2), a person may go left of center to avoid an obstruction.[3] Defendants contend

---

[2] Plaintiffs assert that there is an issue of fact as to whether Pentland activated his right turn signal. However, Lynn was the only witness able to testify as to the matter. A responding trooper testified that Lynn did not mention the signal after the accident, but the trooper also testified that he did not ask Lynn about the signal. Lynn's failure to mention the signal to the trooper does not create a genuine issue of material fact.

[3] Section 4511.25 also imposes a duty on the driver traveling left of center to yield the right of way to all vehicles traveling in the proper direction on the unobstructed portion of the highway within such distance as to constitute an immediate hazard. For example, in *Norris v. Ohio Standard Oil Co.*, 70 Ohio St. 2d 1 (1982), a driver moved left of center around a snowdrift blocking the right lane. A truck coming in the opposite direction crested a hill near where the driver crossed the center line. Both drivers applied their brakes, but were unable to avoid a collision. The court held that though the snowdrift was an obstruction justifying going left of center, the driver was still guilty of negligence *per se* because he failed to yield.
    Here Pentland was not headed towards Lynn in the eastbound lane. He turned in front of Lynn, who was not negligent *per se* for failing to yield to a vehicle operating properly in the opposing direction. *See, e.g. Lembo v. Huntley*,1983 WL 2623 (Ohio Ct. App.) (it was error for the trial court to instruct the jury that a driver was negligent *per se* when a collision occurred between a vehicle being properly driven left-of-center around an obstruction and another vehicle which was not "traveling in the proper direction" under the meaning of § 4511.25(A)(2).).

5

that because Pentland's vehicle was partially on and off the road, the vehicle constituted an obstruction that entitled Lynn to pass on the left.

Lynn testified that Pentland signaled right then pulled to the right and stopped, or almost stopped. Plaintiff has presented no evidence to the contrary, and therefore there is no basis for plaintiff's argument that Pentland's vehicle did not constitute an obstruction because it was still traveling westbound on U.S. 30 when Lynn moved left to pass.

There is no dispute that Pentland's vehicle remained partially in the westbound lane until it turned in front of Lynn. Plaintiff's own expert acknowledges that fact.

The key question is whether Pentland's vehicle was an obstruction under § 4511.25(A)(2). Plaintiff alleges that stopped vehicles in a lane of traffic do not constitute an obstruction. The issue is more nuanced, and whether a vehicle is an obstruction depends on whether it was more akin to a parked car or a car waiting in line behind other occupied cars moving in the same direction.

Plaintiff analogizes the facts to *State v. McWilliams,* 65 Ohio App.3d 699 (1989), in which the defendant went left of center rather than waiting in his lane behind other cars traveling in the same direction. The court held that the line of cars did not constitute an obstruction justifying the defendant's violation of the left-of-center statute.

Here, Pentland turned on his right turn signal, pulled right and stopped or almost stopped while remaining partially in the roadway. Thus, the Pentland vehicle was more like a parked car protruding into the lane than a line of cars ahead waiting their turn to proceed. This case therefore is akin to *Lembo v. Huntley*, 1983 WL 2623, *3 (Ohio Ct. App.), in which the court held that parked cars blocking traffic may constitute an obstruction within the meaning of § 4511.25(A)(2) and thereby necessitating left-of-center travel. Were this not so, the statute would require the motorist,

6

and all others who may come behind him, to wait until the parked vehicle was moved out of the roadway.

Because Pentland's vehicle constituted an obstruction justifying his need to pass left of center, Lynn was not negligent *per se* when he traveled across the center line.

## B. § 4511.21

Section 4511.21 provides that:

> [n]o person shall operate a motor vehicle . . . upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead.

A finding of a violation of § 4511.21 and negligence *per se* requires evidence that "the driver collided with an object which, 1) was ahead of him in his path of travel, 2) was stationary or moving in the same direction as the driver, 3) did not suddenly appear in the driver's path, and 4) was reasonably discernible." *McFadden v. Elmer C. Breuer Trans. Co.*, 156 Ohio St. 430 (1952). However, "an operator who has failed to comply with a mandatory statutory provision may excuse such failure and avoid the legal imputation of negligence per se by establishing that, without his fault and because of circumstances over which he had no control, compliance with the law was rendered impossible." *Elfers v. Bright et al.*, 108 Ohio App. 495, 500 (1958).

The Ohio Supreme Court has considered the application of both § 4511.30 and § 4511.21 to a collision similar to that here. *Pangle v. Joyce et al.*, 76 Ohio St. 3d 389 (1996). In *Pangle*, the Court held that:

> when a lead vehicle departs from a following motorist's line or path of travel, only to reenter the line or path of travel suddenly and without the fault of the following motorist at a forward distance insufficient to allow the following motorist to avoid collision in the exercise of ordinary care, the following motorist is not negligent *per se*. This is true regardless of whether the lead vehicle completely leaves the lane of traffic in which both the lead and following motorists are traveling.

*Id.* at 392-93.

Defendants argue that *Pangle* is directly on point, and Lynn committed no statutory violation because Pentland appeared suddenly in Lynn's path and was moving perpendicular to Lynn at the time of the collision, rather than in the same direction.

Plaintiff insists that the testimony of her expert raises jury questions as to whether: 1) Pentland's vehicle completely left the directional line of Lynn's vehicle's travel; and 2) Lynn, as he testified, was only two truck lengths behind Pentland when Pentland began to turn left. As noted in *Pangle, supra,* 76 Ohio St. 3d at 392-393, it is irrelevant whether Pentland's vehicle completely left Lynn's directional line of travel for the purposes of determining whether the sudden emergency exception applies. However, whether Pentland suddenly reentered Lynn's path is material.

Plaintiff's expert testified that, considering the size of Pentland's vehicle, it would have taken six or seven seconds for it to arrive at the point of the collision from a stop on the right side of the westbound lane. Thus, according to the expert, Pentland could not have suddenly reentered Lynn's path under *Pangle*.

Plaintiff's expert extrapolated that Lynn was not, as Lynn testified, two truck-lengths behind Pentland when Pentland began to turn, but rather approximately 500 feet from Pentland. If so, the expert asserts, Lynn, were he exercising ordinary care, would have had time to stop and avoid the collision.[4] He based this testimony on a review of deposition testimony, laser mapping of the accident scene, and an attempt to reconstruct portions of the accident at the scene.

---

[4] Plaintiff's expert contends that at the time Pentland started to pull forward and turn with part of his Suburban and camper still occupying the westbound lane of U.S. 30, Lynn and his tractor trailer would have been between 491' - 784' east of the area of impact. At a speed of 53.5 miles per hour, Lynn's tractor trailer would require approximately 426 feet to gradually bring it to a stop. Thus, the expert opines that when Pentland started to turn, Lynn was far enough away to have stopped his semi-tractor/trailer in sufficient time to avoid a collision. [Doc. 43-4, at 22-23].

Plaintiff cites *Pangle*, *supra,* 76 Ohio St. 3d 395, for the contention that where competing inferences arise from the evidence, it is the jury's responsibility to determine which account of how the accident occurred to believe. Indeed, "[o]nce expert testimony [i]s admitted, it [i]s the jury's role to assess the experts' credibility and to assign weight to the experts' testimony and opinions. *Pangle*, *supra,* 76 Ohio St. 3d 394 (citing *State v. Pargeon*, 64 Ohio App. 3d 679, 682, (1991)).

Defendants allege that "there is no conflicting version of how the accident occurred." [Doc.44 at 5]. On the contrary, plaintiff's expert's testimony establishes a dispute as to whether Lynn could have avoided colliding with Pentland by simply coming to a stop.

## II. Proximate Cause

Even if Lynn were undoubtedly negligent *per se* in violation of § 4511.21 and § 4511.30, plaintiff must still allege that Lynn's negligence proximately caused the accident. *See, e.g. Horstman v. Farris*, 132 Ohio App. 3d 514, 528 (1999) ("Even though the law may presume negligence from a person's violation of a statute, the law does not, from that presumption alone, presume that such negligence was the proximate cause of the injury.").

For plaintiff to establish proximate cause, she must demonstrate that the collision was a foreseeable consequence of Lynn's alleged negligence. *Mussivand*, *supra,* 45 Ohio St.3d at 321. An event is a foreseeable consequence if a reasonably prudent person under similar circumstances would have anticipated that the event was the likely result of his conduct. *Id.*

Resolution of the question of whether a party's negligence proximately caused an accident is ordinarily a question of fact. *Keister v. Park Centre Lanes*, 3 Ohio App.3d 19 (1981); *see also, Kellner, supra,* 359 F.3d at 407 (proximate cause is to be determined by the jury, "unless the

9

uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome.").

Defendants contend that Pentland's own *per se* negligence in making a u-turn without reasonable caution or signaling in violation of § 4511.39 was the sole proximate cause of the collision. In response, plaintiff argues that Lynn had time and room to stop, rather than deciding to pass Pentland's vehicle. His decision to pass, rather than to stop, according to plaintiff, was the proximate cause of the accident.

There being a dispute as to whether, as Pentland started his fateful and fatal maneuver, Lynn's decision to pass, rather than stop, constituted a violation of the statute, the issue of proximate cause remains in dispute for the jury to decide.

### III. General Negligence

Plaintiff also alleges general negligence, including Lynn's failure to exercise reasonable care under the circumstances, defendants' negligence in hiring and retaining Lynn, and their failure to reasonably and/or adequately train, supervise and instruct him.

With regard to Lynn, the issue is the same whether viewed through the lens of the assured clear distance statute or that of an ordinary want of care: did he have time to stop once he saw Pentland moving into his pathway, and, if so, in the exercise of due caution, should he have done so.

With respect to the claims that defendant companies were negligent in hiring, retaining, training, supervising and instructing Lynn plaintiff has, however, proffered only bare allegations. Such are insufficient to survive summary judgment. *Celotex, supra,* 477 U.S. at 324. Summary judgment is appropriate on the hiring, retaining, training, supervising and instructing claims.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT defendants' motion for summary judgment [Doc. 39] be, and the same hereby is granted in part and denied in part.

So Ordered.

s/James G. Carr<br>
U.S. District Judge